In the Matter of Michael A. **HEIMBOUCH**, Debtor.

Bankruptcy No. BK99–41454.

United States Bankruptcy Court, D. Nebraska.

March 23, 2000.

James Carney, for Bank.

Eric Wood, for Debtor.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on Objection to Claim of Exemptions. Appearances: James Carney for the objecting party and Eric Wood for the Debtor. This memorandum contains findings of fact and conclusions of law required by Fed. Bankr.R. 7052 and Fed. R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).

### Background

The Debtor in this case, Michael Heimbouch, claims the right to an exemption for a significant portion of the value of his 1984 Corvette. A Corvette is a sports car manufactured by the Chevrolet division of General Motors Corporation. The seating capacity is two, one driver and one passenger. The Corvette is listed on the Debtor's schedules as having a present fair market value of $5,500.00. The Debtor is claiming $2,000.00 of the value of the Corvette exempt under Neb.Rev.Stat. § 25–1552 (Reissue 1998) as personal property. The Debtor is also claiming $2,400.00 of the value of the Corvette exempt under Neb.Rev.Stat. § 25–1556(4) (Reissue 1998), as a motor vehicle used "in connection with" his business. The business of the Debtor is farming. The Debtor acknowledges that any value of the Corvette in excess of the amount of $4,400.00 is not exempt.

The objection to the claim for exemption was brought by creditor Community First National Bank ("Bank"). It is the Bank's position that (1) the objection to the Section 25–1552 portion of the claim of exemption is that the vehicle is not an immediate personal possession of the Debtor and, therefore, is not exempt, and (2) it would be inappropriate to claim a portion of the value of the Corvette exempt under Sec-

tion 25–1556(4) because the vehicle does not qualify as a tool or implement.

### Facts

1. Debtor's principal business or trade is farming.

2. Debtor has four (4) vehicles in addition to the Corvette. He has a 1993 Jeep Cherokee, which is subject to a lien held by the Debtor's attorneys; a 1994 Jeep Wrangler, which is subject to two liens (Union Bank & Trust Co. and Banner County Bank); a 1995 Dodge Pick–Up Truck, which is subject to one lien (Banner County Bank); and a 1996 Dodge Pick–Up Truck, which is subject to two liens (Chrysler Credit Corp. and Banner County Bank). Except for the 1993 Jeep Cherokee which appears to be security for payment for legal services, the Debtor plans to reaffirm the debts on all of these vehicles.

3. Debtor owns one car, the Corvette.

4. During the farming season, Debtor makes two to three trips per week from his residence to Scotts Bluff or Harrisburg, Nebraska, a distance of approximately forty miles, for the purpose of purchasing parts or meeting with his banker. The Corvette is the vehicle he uses for such trips, unless the needed part is so large that it must be picked up in a truck.

5. During the winter, Debtor averages one trip per week to Scotts Bluff and other locations for the purpose of seed corn meetings, chemical meetings, or other activities related to the farming operation. He uses the Corvette for such trips.

6. The Debtor's farm machinery is located on ground rented by him which is approximately six miles from his house. He frequently uses the Corvette to go from his house to the rented farm ground where the equipment is located.

### Issues

A. Does the 1984 Corvette qualify for the exemption authorized by Neb.Rev.Stat. § 25–1552 as personal property of the Debtor?

1. Neb.Rev.Stat. § 1556(1) states: "No property hereinafter mentioned shall be liable to attachment, execution, or sale on any final process issued from any court in this state,

B. Does the 1984 Corvette qualify for the exemption authorized by Neb.Rev.Stat. § 25–1556(4) because of its occasional use by the debtor "in connection with" the farming business?

### Decision

A. The 1984 Corvette is personal property of the Debtor and qualifies for the Section 1552 exemption because this statute does not limit the personal property exemption to "immediate personal possessions."

B. The 1984 Corvette does not qualify for the Section 1556(4) exemption because, although it appears to be used "in connection with" the farming business, there is no evidence that the 1984 Corvette is "held for use in the principal trade or business" of the Debtor, as is required by the statute.

### Conclusions of Law and Discussion
#### A. Neb.Rev.Stat. § 1552

■ The personal property exemption is claimed under Neb.Rev.Stat. § 25–1552. That section states, in relevant part: "Each natural person residing in the state shall have exempt from forced sale on execution the sum of two thousand five hundred dollars in personal property, except wages." This sentence was enacted as an amendment to Section 25–1552 by the Nebraska Legislature in 1997. Although it has been held that a motor vehicle does not qualify as an "immediate personal possession" under Section 25–1556(1), *In re Scrams,* 172 B.R. 297 (Bankr.D.Neb.1994), Section 25–1552 does not require the "personal property" to be an "immediate personal possession." [1]

Debtor claims $2,000.00 of the $2,500.00 personal property exemption in the value of the Corvette and such claim does not violate the personal property exemption of Section 25–1552 and shall be allowed.

against any person being a resident of this state: (1) The immediate personal possessions of the debtor and his or her family."

B. *Neb. Rev. Stat. § 25–1556(4)*

■ The second exemption statute at issue is Neb.Rev.Stat. § 25–1556(4). It does not appear that this statute, which was passed in the current form by the Nebraska Legislature in 1997, has been the subject of any court interpretation. The applicable parts of the statute states:

**25–1556. Specific exemptions; personal property; selection by debtor.**

No property hereinafter mentioned shall be liable to attachment, execution, or sale on any final process issued from any court in this state, against any person being a resident of this state: . . . (4) the debtor's interest, not to exceed an aggregate fair market value of two thousand four hundred dollars, in implements, tools, or professional books or supplies **held for use** in the principal trade or business of such debtor or his or her family, . . . which **may** include one motor vehicle used by the debtor **in connection with** his or her principal trade or business or to commute to and from his or her principal place of trade or business; . . . (emphasis added)

Reading the plain words of the statutory language, in order to qualify as exempt, property identified as implements or tools must be "held for use" in the principal business or trade of the debtor. Included in the definition of implements or tools may be one motor vehicle used by the debtor "in connection with" his or her principal business or trade. However, such *motor* vehicle qualifies for the exemption only if, like other implements or tools, it is "held for use in the principal trade or business of such debtor."

The Debtor does not argue that the 1984 Corvette was purchased for use as an implement or tool in the farming business. The Debtor does not argue that the 1984 Corvette, which, if actually purchased for personal use, has somehow, by its continued and occasional use in connection with the farming business, been converted into a vehicle actually "held for use" in the farming business. The Debtor does not testify or argue that he either purchased or continues to hold the vehicle for the purpose and with the intent of using it in the farming operation. He has several other vehicles which may actually be "held for use" and used "in connection with" the farming operation. These include a 1993 Jeep Cherokee, a 1994 Jeep Wrangler, and a 1995 Dodge Pickup Truck, and a 1996 Dodge Pickup Truck.

The statute does not define the phrase "held for use." However, the word "hold" has been interpreted to mean "own or possess." *Webster's Ninth New Collegiate Dictionary* 575 (1990). The phrase "held for use," therefore, could logically be construed as meaning, with regard to a motor vehicle, that if the debtor has equity of up to $2,400.00 in a motor vehicle which the debtor owns or possesses for the purpose of using in a farming operation and which actually is used in connection with the farming operation, the motor vehicle qualifies for the exemption.

In this case, there is no evidence that Mr. Heimbouch owns or possesses the 1984 Corvette sports car for the purpose of using it in a farming operation. According to him, he does use it occasionally "in connection with" the farming operation. However, a 1984 Corvette two-seater sports car could not be of much use in pulling equipment, hauling supplies, carrying fence posts, hauling water, hauling fuel for machinery and equipment, or carrying human beings across farm fields lacking improved roads. All of the above-listed possible farming activities could be accomplished by any of the other vehicles that Mr. Heimbouch owns. There is no evidence in the record, and it is simply not logical, that a farmer would own a Corvette for the purpose of using it in a farming operation.

*Conclusion*

A 1984 Corvette owned by the Debtor does not qualify for the exemption authorized in Neb.Rev.Stat. § 25–1556(4). The objection of the creditor is sustained as to that portion of the claimed exemption, but

the objection of the creditor to the claim of exemptions under Neb.Rev.Stat. § 25–1552 is denied.